IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

APPEAL NO. 16-13406-D

---

JIMMY PAULK, TARA WILCOX, and ESTES PARK, L.P.

Appellants,

v.

GEORGIA DEPARTMENT OF TRANSPORTATION, et al,

Appellees.

---

Appeal from the United States District Court
for the Southern District of Georgia
Waycross Division
Civil Action File No. CV516-019

---

# BRIEF FOR APPELLANTS

---

Edward F. Preston
Georgia Bar. No. 587416
COLEMAN TALLEY, LLP
PO Box 5437
Valdosta, GA 31603-5437
Tel: (229) 242-7562
Fax: (229) 333-0885
ed.preston@colemantalley.com

Scott Parrish Moore
Nebraska Bar No. 20752
Leigh C. Campbell
Massachusetts Bar No. 682687
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68114
Tel: (402) 344-0500
Fax: (402) 344-0588
spmoore@bairdholm.com
lcampbell@bairdholm.com

*Attorneys for Appellants*

*Appeal No. 16-13406-D, Jimmy Paulk v. Georgia Dept. of Transp.*

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellants submit the following list of the trial judge, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. Baird Holm LLP (Counsel for Plaintiffs/Appellants)
2. BC Holdings, LLC (general partner/ manager – Estes Park, LP)
3. Braden, Jerry W. (member - BC Holdings, LLC)
4. Braden, Annamarie (member – BC Holdings, LLC)
5. Chalmers, Roger A. (Counsel for Defendants/Appellees)
6. Coleman Talley LLP (Counsel for Plaintiffs/Appellants)
7. Estes Park, L.P. (Plaintiff/Appellant)
8. Georgia Department of Transportation (Defendant/Appellee)
9. Grant, Britt C. (Counsel for Defendants/Appellees)

10. Key Investment Fund Limited Partnership XII

    (investment limited partner of Estes Park, L.P.)

11. Key Investment Fund LLC XXXI

    (Georgia limited partner of Estes Park, L.P.)

12. McMurray, Russell R. (Defendant/Appellee)

13. Moore, Scott P. (Counsel for Plaintiffs/Appellants)

14. Olens, Samuel S. (Counsel for Defendants/Appellees

15. Orland, Devon (Counsel for Defendants/Appellants)

16. Pacious, Kathleen M. (Counsel for Defendants/Appellees)

17. Paulk, Jimmy (Plaintiff/Appellant)

18. Preston, Edward F. (Counsel for Defendants/Appellants)

19. State of Georgia (Defendant/Defendant)

20. Wilcox, Tara (Plaintiff/Appellant)

21. Wood, Hon. Lisa G. (Trial Judge)

*/s/Edward F. Preston*
Edward F. Preston
Georgia State Bar No. 587416
Attorney for Appellants

COLEMAN TALLEY LLP
Post Office Box 5437
Valdosta, GA 31603-5437
Telephone: (229) 242-7562
Facsimile: (229) 333-0885
Email: ed.preston@colemantalley.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument in this matter. The issues in this case involve the complex application of the Federal Fair Housing Act and constitutional protections to the taking of private property through state eminent domain proceedings. This is a matter of first impression before the Eleventh Circuit, and oral argument will aid the Court in evaluating these complex legal issues.

# TABLE OF CONTENTS


| | |
|---|---|
| CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT………………………………………………. | i |
| STATEMENT REGARDING ORAL ARGUMENT…………………….…... | iii |
| TABLE OF CONTENTS……………………………………………............. | iv |
| TABLE OF AUTHORITIES………………………………………….......... | vi |
| STATEMENT OF JURISDICTION………………………………………. | xiii |
| STATEMENT OF ISSUES………………………………………………… | 1 |
| STATEMENT OF THE CASE…………………………………….................. | 3 |
| SUMMARY OF THE ARGUMENT………………………………………. | 5 |
| ARGUMENT……………………………………………………………......... | 8 |
| I. Standard of Review………………………………………………........... | 8 |
| II. The Younger Doctrine is Not Applicable to Plaintiffs' Claims……..... | 8 |
| III. Estes Parks Has Stated a Valid Claim Under the Fair Housing Act…. | 12 |
| A. GDOT's Alleged Conduct Makes Housing Unavailable Under § 3604(a)……………………………………………. | 14 |
| 1. GDOT's Alleged Conduct Is Sufficient to Establish a § 3604(a) Claim……………………………………… | 15 |

2. Paulk's Constructive Eviction Allegations Are Sufficient to Establish a § 3604(a) Claim……………… 17

B. The District Court Erred in Holding That the Plaintiffs' Allegations Do Not Implicate § 3604(a)………………………... 19

1. Section 3604(b) Is Not Limited to Conduct Related to the Sale or Rental of Housing……………………....... 20

2. GDOT's Conduct Involves the "Provision of Services" ……………………………………………… 24

C. The District Court Erred in Holding That GDOT's Conduct Cannot Violate § 3617……………………………………………. 25

IV. Estes Park's Complaint States a Valid Claim Under Title VI of the Civil Rights Act…………………………………………………… 28

V. Estes Park Adequately Plead a Violation of its Substantive Due Process Rights Under § 1983……………………………………… 29

CONCLUSION ……………………………………………………….... 32

CERTIFICATE OF COMPLIANCE………………………………………... 34

CERTIFICATE OF SERVICE……………………………………............ 35

# TABLE OF AUTHORITIES

**Cases**

Bell Atl. Corp. v. Twombly

550 U.S. 544, 556, 570 (2007) ................................................ 8

Bloch v. Frischholz

587 F.3d 771, 782 (7th Cir. 2009) ......................................... 13, 22

Brakebill v. Moncier

No. 3:14-CV-105-TAV-CCS, 2014 WL 10212897, at *6

(E.D. Tenn. Dec. 17, 2014) .................................................... 11

Chevron, USA, Inc. v. Natural Res. Def. Council

467 U.S. 837, 844 (1984) ...................................................... 21

City of Miami v. Bank of Am. Corp.

800 F.3d 1262, 1281-82 (11th Cir. 2015) ................................... 12

Comm. Concerning Cmty. Improvement v. City of Modesto

583 F.3d 690, 713-14 (9th Cir. 2009) ............................... 22, 23, 24

Cox v. City of Dallas

430 F.3d 734, 740 (5th Cir. 2005) .........................................15, 16, 17, 23

Dandar v. Church of Scientology Flag Serv. Org., Inc.

551 F. App'x 965, 967 (11th Cir. 2013) ................................... 10, 11

Daviton v. Columbia/HCA Healthcare Corp.

241 F.3d 1131 (9th Cir. 2001) …………………………………………… 28

Edwards v. Marin Park, Inc.

356 F.3d 1058, 1063 (9th Cir. 2004) ……………………………………... 26

Fobbs v. Holy Cross Health Sys. Corp.

29 F.3d 1439, 1447 (9th Cir. 1994) ………………………………………. 28

Greater New Orleans Fair Housing Action Center v. U.S. Dept. of Housing and

Urban Dev., 723 F.Supp.2d 14, 23 (D.D.C. 2010) ……………………….. 17

Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey

276 F.Supp.2d 1222, 1233 (M.D. Fla. 2003), *vacated on other grounds*,

No. 8:02CV1955T30TGW, 2003 WL 22149660

(M.D. Fla. Sept. 16, 2003) ……………………………………………. 20, 23

Greenbriar, Ltd. v. City of Alabaster

881 F.2d 1570, 1574 n. 8 (11th Cir. 1989) ……………………………….. 30

Greenbriar Vill., L.L.C. v. Mountain Brook, City

345 F.3d 1258, 1262 (11th Cir. 2003) (*per curiam*) ……………………... 29

Greer v. Mehiel

No. 15-cv-6119-AJN, 2016 WL 828128 (S.D.N.Y. Feb. 24, 2016) ……... 12

Haberle v. Univ. of Alabama in Birmingham

803 F.2d 1536, 1539 n. 1 & 1540 (11th Cir. 1986) ………………………. 30

Hallmark Developers, Inc. v. Fulton County. Ga.

466 F.3d 1276, 1283 (11th Cir. 2006) ……………………………………….... 14

Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n.

388 F.3d 327 (7th Cir. 2004) ……………………………………………….... 23

Hazewood v. Found. Financial Group, LLC

551 F.3d 1223, 1224 (11th Cir. 2008) ………………………………………. 18

Honce v. Vigil

1 F.3d 1085, 1089–90 (10th Cir. 1993) ……………………………………... 23

Huffman v. Pursue, Ltd.

420 U.S. 592 (1975) ……………………………………………………… 9

Hunt v. Aimco Prop., L.P.

814 F.3d 1213, 1223 (11th Cir. 2016) ……………………………………... 14, 22

Jackson v. Okaloosa Cnty. Fla.

21 F.3d 1531, 1542 n. 17 (11th Cir. 1994) ……………………………...... 14

Jersey Heights Neighborhood Assoc. v. Glendening

174 F.3d 180, 192 (4th Cir. 1999) ………………………………………….... 16

Langley Land Co. v. Monroe Cty.

738 F. Supp. 1571, 1577 (M.D. Ga. 1990) ……………………………….. 30

Lawrence v. Courtyards at Deerwood Ass'n

318 F. Supp. 2d 1133, 1142 (S.D. Fla. 2004) ………………………… 20, 36

LeBlanc-Sternberg v. Fletcher

67 F.3d 412, 424-25 (2d Cir. 1995) ………………………………………. 24

Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights

558 F.2d 1283, 1288 (7th Cir. 1977) ……………………………………... 27

Middlesex Cty. Ethics Comm’n v. Garden State Bar Ass’n

457 U.S. 423, 432 (1982) ……………………………………………………10

Monroe v. Thigpen

932 F.2d 1437, 1442 (11th Cir. 1991) ……………………………………. 32

Mullholland v. Marion Cty. Elec. Bd.

746 F.3d 811 (7th Cir. 2014) ……………………………………………... 10

NAACP v. Am. Family Mut. Ins. Co.

978 F.2d 287, 301 (7th Cir. 1992) ………………………………………... 24

Nationwide Mut. Ins. Co. v. Cisneros

52 F.3d 1351, 1357 (6th Cir. 1995) ……………………………………… 24

Neudecker v. Boisclair Corp.

351 F.3d 361, 364 (8th Cir. 2003) ……………………………………….. 23

Quigley v. Winter

598 F.3d 938, 948 (8th Cir. 2010) ……………………………………….. 26

Pennzoil Co. v. Texaco Inc.

481 U.S. 1 (1987) ………………………………………………………… 9, 11

Rehab. Support Serv. Inc. v. City of Albany

No. 1:14-CV-0499, 2015 WL 4067066 (N.D.N.Y. July 2, 2015) ………... 11

Renfroe v. Nationstar Mortg., LLC

822 F.3d 1241, 1243 (11th Cir. 2016) …………………………………….. 8

Rodriguez v. California Highway Patrol

89 F. Supp. 2d 1131, 1139 (N.D. Cal. 2000) …………………………….. 28

Sierra Club v. Martin

168 F.3d 1, 5 (11th Cir. 1999) ………………………………………………. 32

Sofarelli v. Pinellas Cnty.

931 F.2d 718, 721-22 (11th Cir. 1991) ………………………………. 25, 26

Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair

743 F.2d 1207, 1210 (7th Cir. 1984) …………………………………….. 16

Spence v. Zimmerman

873 F.2d 256, 258 (11th Cir. 1989) …………………………………..  29, 30

Sprint Communications, Inc. v. Jacobs

___ U.S. ___, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013) …….  5, 8, 9, 10, 11

Steele v. City of Port Wentworth

No. CV405-135, 2008 WL 717813 at *12 (S.D. Ga. Mar. 17, 2008)… 20, 23

Timson v. Sampson

518 F.3d 870, 872 (11th Cir. 2008) ……………………………………….  8

Toucan Partners, LLC v. Hernando Cnty. Fla.

571 Fed. App'x 737 (11th Cir. 2014) ……………………………………… 14

Trafficante v. Metro. Life Ins.

409 U.S. 205, 209 (1972) ……………………………………………….. 12, 13

United States v. Borough of Audubon

797 F. Supp. 353, 357 (D. N.J. 1991) ……………………………………… 27

United States v. City of Black Jack

508 F.2d 1179 (8th Cir. 1975), *cert. denied*, 422 U.S. 1042 (1978) ……... 27

United States v. City of Parma

494 F. Supp. 1049, 1100 (N.D. Ohio 1980) ……………………………… 26

United States v. Koch

352 F. Supp. 2d 970, 976 (D. Neb. 2004) ………………………………... 21

Wexler v. Lepore

385 F.3d 1336, 1339 (11th Cir. 2004) ……………………………………... 9

Young v. Harris

401 U.S. 37 (1971) …………………………………….. 4, 5, 8, 9, 10, 11, 12

**Statutes**

Fourth Amendment to the United States Constitution …………………………..  3

Fourteenth Amendment to the United States Constitution ………………… 3, 6, 29

28 U.S.C. § 1291 ……………………………………………………………….. viii

28 U.S.C. § 1331 .......................................................... viii

28 U.S.C. § 2201 .......................................................... viii

28 U.S.C. § 2202 .......................................................... viii

42 U.S.C. § 2000(d) (Title VI of the Civil Rights Act of 1964) … viii, 2, 3, 4, 6, 28

42 U.S.C. § 1983 .......................................................... viii, 3, 4, 6

42 U.S.C. 3601 (Fair Housing Act) .......................................... 3, 4, 12, 13

42 U.S.C. § 3604(a) .................................. 1, 6, 13, 14, 15, 16, 17, 18, 19, 23

42 U.S.C. § 3604(b) .................................. 1, 6, 13, 19, 20, 21, 22, 23, 24, 25

42 U.S.C. § 3604 (f)(2) .......................................................... 22

42 U.S.C. § 3608 .......................................................... 21

42 U.S.C. § 3613 .......................................................... viii

42 U.S.C. § 3617 ..........................................1, 6, 13, 25, 26, 27, 28

42 U.S.C. § 3631 .......................................................... 27, 28

Title VIII of the Civil Rights Act of 1968 .......................................... 3

**Regulations**

24 C.F.R. § 100.65(b)(4) .......................................................... 21

24 C.F.R. § 100.70(d)(4) .......................................................... 21

24 C.F.R. § 100.70(d)(5) .......................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................... 4

## STATEMENT OF JURISDICTION

This appeal is from a decision of the district court granting Defendants-Appellees' Motion to Dismiss. The district court had jurisdiction under 28 U.S.C. § 1331 based on federal question jurisdiction, as well as 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 3613, 42 U.S.C. § 1983, and 42 U.S.C. § 2000(d). [Vol. I, Doc. 6, ¶ 5]. The district court's judgment was entered on June 1, 2016, and disposed of all claims of all parties. [Vol. III, Doc. 27]. Appellants filed this appeal on June 8, 2016. [Vol. III, Doc. 28] This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

This appeal presents the following issues:

1. Whether the District Court erred in granting Appellees' Motion to Dismiss based on the federal abstention doctrine set forth in Younger v. Harris when the subject matter of the case does not implicate any uniquely judicial function of a Georgia state court?

2. Whether the District Court erred in holding that GDOT's conduct did not violate § 3604(a) of the Fair Housing Act ("FHA") even though the conduct had a direct impact on the housing rights of the Plaintiffs including constructive eviction?

3. Whether the District Court erred in holding that § 3604(b) of the FHA does not apply to discriminatory conduct that occurs after the initial sale or rental of housing?

4. Whether the District Court erred in holding that GDOT's taking of Estes Park which will result in the constructive eviction of minority tenants is not discrimination in the provision of services under § 3604(b) of the FHA?

5. Whether the District Court erred in holding that Appellants, in order to establish a claim under § 3617 of the FHA, must establish that GDOT's conduct "is so severe or pervasive that it could be considered as threatening or violent."

6. Whether the District Court erred in determining that Appellants failed to establish a *prima facie* case of discrimination under Title VI of the Civil Rights Act where Appellants alleged that GDOT engaged in knowing, intentional discrimination when it used eminent domain to take a portion of the Estes Park property as part of a federally-funded highway project?

7. Whether the District Court erred in finding that Appellants had not established a substantive due process violation where GDOT acted in an arbitrary and capricious manner by knowingly relying on inaccurate Environment Justice ("EJ") impact analyses to justify its decision to take a portion of the Estes Park property for its highway expansion project?

## STATEMENT OF THE CASE

On February 19, 2016, Plaintiffs-Appellants (together, "Estes Park") sued Defendant-Appellees Georgia Department of Transportation, Russell R. McMurray, in his official capacity as the Commissioner of the Georgia Department of Transportation, and the State of Georgia (together, "GDOT") to enforce Title VIII of the Civil Rights Act of 1968, the Fair Housing Act, as amended, 42 U.S.C. 3601, et seq. ("FHA"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) ("Title VI"), and 42 U.S.C. § 1983 ("Section 1983") for the violation of the Fourth and Fourteenth Amendments to the United States Constitution. [Vol. I, Doc. 1]. Estes Park subsequently filed an Amended Complaint ("Complaint") on February 24, 2016. [Vol. I, Doc. 6]. As stated therein, GDOT engaged in intentional discrimination on the basis of race, familial status, and disability by siting a roadway through Estes Park Apartments. Id. at ¶¶ 35-38. Among other things, GDOT utilized misleading data to conduct an inaccurate EJ analysis so that they could take a material portion of Estes Park Apartments to minimize the impact of the roadway on non-minority owned properties. Id. The taking of a portion of Estes Park's property to create the roadway has a disparate impact on the largely minority tenants of the development. Id. GDOT proceeded with this highway project despite knowledge that it had conducted the prerequisite analyses inappropriately and that there was an alternative project plan that would result in a

taking far less of the Estes Park property while at the same time resulting in significant cost savings to taxpayers. Id. at ¶ 39.

On April 4, 2016, GDOT filed a Motion to Dismiss the Complaint and accompanying Brief in Support, alleging that the Federal Court should abstain from rendering a decision on this matter based on the doctrine articulated in Young v. Harris, 401 U.S. 37 (1971). [Vol. I, Doc. 8; Doc 8-1, pg. 5-8]. According to GDOT, the parallel state court proceedings filed by Estes Park, L.P. challenging the condemnation of a portion of Estes Park, L.P.'s property implicate an important state interest and the federal courts should not interfere with the review of such decisions. GDOT further argued under Fed. R. Civ. P. 12(b)(6) that the Complaint failed to state a valid cause of action under the federal statutes enumerated in the Complaint. [Vol. I, Doc. 8-1, pg. 11-25].

In Estes Park's Brief in Opposition to Defendants' Motion to Dismiss, [Vol. I, Doc. 12], Estes Park argued that application of the Younger abstention doctrine is inappropriate because Estes Park's challenge to the eminent domain process does not implicate one of the three narrow categories to which the Younger abstention doctrine applies. Id. at 3-5. Additionally, Estes Park argued that under the liberal pleading standard set forth in Fed. R. Civ. P. 12(b)(6), it had alleged sufficient facts to state claims under the Fair Housing Act, Title VI, and §1983. Id. at 7-20.

On May 24, 2016, District Court Judge Lisa Godbey Wood issued an Order granting Defendants' Motion to Dismiss the Complaint in its entirety. [Vol. III, Doc. 26, pg. 41]. First, the District Court held that abstention under Younger was "undeniably the appropriate course" in this matter because the Complaint allegedly involved an order that is "uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 14 (internal citations and quotation omitted). The District Court further stated that, even if abstention was not appropriate, Estes Park had failed to state a cause of action under any theories set forth in the complaint. Id. at 20. The District Court's judgment was entered on June 1, 2016, and disposed of all claims. [Vol. III, Doc. 27]. Estes Park appeals this decision. [Vol. III, Doc. 28]

## SUMMARY OF THE ARGUMENT

1. The Younger abstention doctrine in not applicable to Plaintiff’s claims under the FHA, Title VI, or §1983. As reiterated by the United States Supreme Court in Sprint Communications, Inc. v. Jacobs, ___ U.S. ___, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013), abstention is only appropriate in three exceptional circumstances where the claims require review of: (1) state criminal prosecutions; (2) civil enforcement proceedings akin to criminal prosecution; and (3) certain orders uniquely in furtherance of the state courts’ ability to perform their judicial functions. A challenge to Georgia DOT proposed highway construction project

does not fall within any of these enumerated categories, and thus the District Court should not abstain from rendering a decision in this matter. Further, since Appellants Wilcox and Paulk are not parties in the state court condemnation action, the Younger abstention doctrine should not bar their FHA claims.

2. Estes Park has alleged sufficiently plausible facts to support its FHA claims. The District Court applied an extremely narrow interpretation of the FHA in holding GDOT's conduct was too attenuated to the sale or rental of housing to violate § 3604(a) of the FHA. The District Court unjustifiably equated GDOT's conduct to remote conduct such as siting a dump in an adjacent neighborhood that may reduce a homeowner's property value that other courts have held is too attenuated to violate § 3604(a). Here, GDOT's conduct in taking a portion of Estes Park, which has a direct impact on the housing rights of minority tenants including constructive eviction, is sufficient to state a plausible claim under § 3604(a).

3. The District Court also erred in concluding § 3604(b) of the FHA does not apply to GDOT's post-acquisition discriminatory conduct. Were this Court to accept the District Court's reasoning, the right to inhabit rental housing free from discrimination would not exist.

4. The District Court erred in holding § 3617 requires Estes Park to prove GDOT engaged in conduct "so severe or pervasive that it could be considered as threatening or violent." Section 3617's prohibition on "interference"

with the fair housing rights of others does not impose such a high burden and the District Court erred in attempting to write this requirement into statute. Accepting all of the allegations in the Amended Complaint as true and drawing all reasonable inference in favor of Plaintiffs, Estes Park has undoubtedly alleged sufficiently plausible facts to establish an FHA claim.

5. Under Title VI, Estes Park need only plausibly allege that GDOT engaged in unlawful discrimination and that GDOT was a recipient of federal funding. At this early stage of the proceeding, Estes Park does not even need to plead intent. In its Complaint, Estes Park alleges that GDOT knowingly relied on outdated, inaccurate data to conduct the EJ analysis required by federal law in an attempt to sidestep the need to accommodate Estes Park's minority and low income tenants. Because GDOT is a recipient of federal funding, allegations of such intentional, discriminatory acts are sufficient to state a claim under Title VI.

6. Estes Park stated a valid cause of action under 42 U.S.C. §1983 for violations of substantive due process. GDOT engaged in the taking of the Estes Park property in an arbitrary and capricious manner because it knowingly omitted Estes Park from its EJ impact analysis and purposely utilized outdated census data to justify its decision to take a portion of the Estes Park property for its highway expansion project.

# ARGUMENT

## I. STANDARD OF REVIEW

The Eleventh Circuit reviews a district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on a de novo basis, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1243 (11th Cir. 2016) (quoting Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008) (*per curiam*)). To survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true and construed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." Id. at 1244 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). While the complaint must "raise a right to relief above the speculative level," it need not contain "detailed factual allegations." Id.

## II. THE YOUNGER DOCTRINE IS NOT APPLICABLE TO PLAINTIFFS' CLAIMS

The District Court erred in holding that the Younger doctrine required that it abstain from reviewing the eminent domain proceedings that resulted in the taking of the Estes Park property. [Vol. III, Doc. 26, pg. 14-19]. Generally, federal courts have a unwavering duty to decide cases within the scope of federal jurisdiction. Sprint Commc'ns, Inc. v. Jacobs, ___ U.S. ___, 134 S. Ct. 584, 588,

187 L. Ed. 2d 505 (2013). Federal abstention is not required merely because there is a pending parallel state court proceeding. Id. (internal citation omitted); see also Wexler v. Lepore, 385 F.3d 1336, 1339 (11th Cir. 2004). However, federal courts have recognized that there exist certain limited "extraordinary circumstances" where federal courts should abstain in favor of pending state proceedings.

In Younger, the United States Supreme Court found that federal-court abstention is required where there is a parallel, pending state criminal proceeding. 401 U.S. 37. The Court later extended the Younger abstention doctrine to include state civil proceedings that are akin to criminal prosecutions, see Huffman v. Pursue, Ltd., 420 U.S. 592 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987). In Pennzoil Co., the Supreme Court found that abstention was proper where the plaintiff challenged Texas's judgment lien and appeal bond provisions because an injunction would interfere with “the execution of state judgments, ... [and] the very process by which those judgments were obtained.” Id. at 14.

In 2013, the Supreme Court revisited Younger and its progeny and explicitly reversed the trend in the lower courts to treat abstention as the rule, rather than the exception. See Sprint, 134 S. Ct. at 588. Instead, the Court in Sprint reiterated that the federal court’s obligation to hear and decide a case is “virtually unflagging” and “only exceptional circumstances… justify a federal court’s refusal to decide a

case in deference to States." Id. at 591 (internal quotations and citations omitted). Thus, unless the matter falls within one of three narrow categories—ongoing state criminal prosecutions, certain civil enforcement proceedings, and proceedings uniquely in furtherance of the state courts' ability to perform their judicial functions—federal abstention is inappropriate. Id. at 593-94; see also Mullholland v. Marion Cty. Elec. Bd., 746 F.3d 811 (7th Cir. 2014).

Here, the District Court incorrectly held that this matter implicates Georgia's interest in enforcing state court orders and judgments and thus fell within the third Younger category. In support of its holding, the District Court cites several pre-Sprint cases holding that eminent domain laws implicate important state interests. [Vol. III, Doc. 26, pg. 16-17]. The "important state interest" factor analyzed by the District Court is one of three factors set forth in Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Nevertheless, the Court should not consider any Middlesex factors until it is first satisfied that the relevant claims fall within one of the three exceptional circumstances under Younger. See Dandar v. Church of Scientology Flag Serv. Org., Inc., 551 F. App'x 965, 967 (11th Cir. 2013).

This matter does not fall within the third category of the Younger abstention doctrine. GDOT's taking of a portion of the Estes Park property through eminent domain does not touch on the state court's ability to perform its uniquely judicial

function. In fact, the only involvement of the Georgia courts in the decision to take the Estes Park property comes in the form of judicial review, which is insufficient to bring these claims within the "judicial function" category. See, e.g., Sprint, 134 S. Ct. at 592 (finding that an administrative proceeding that has a state court review mechanism does not fall within the judicial exception).

A comparison of cases in which a state court's unique judicial function ***is*** implicated is instructive here. See, e.g., Pennzoil Co., 481 U.S. at 14 (challenges to Texas's judgment lien and appeal bond provisions implicate judicial functions); Dandar, 619 F. App'x at 948 (pending state proceeding involving enforcement of a state court settlement agreement involved the viability of the court's mediation system and thus constituted a unique judicial function); Brakebill v. Moncier, No. 3:14-CV-105-TAV-CCS, 2014 WL 10212897, at *6 (E.D. Tenn. Dec. 17, 2014) ("The contempt process…lies at the core of the administration of a state's judicial system."). In contrast, following the Supreme Court's decision in Sprint, district and circuit courts of appeal have universally rejected the argument that the Younger abstention doctrine applies to FHA and similar claims. For example, in Rehab. Support Serv. Inc. v. City of Albany, No. 1:14-CV-0499, 2015 WL 4067066 (N.D.N.Y. July 2, 2015), the City denied a group home provider's request for a variance from a city zoning ordinance to operate a residence for individuals recovering from alcoholism and drug addiction, and the group home filed claims in

state and federal court. The federal court determined that the Younger abstention doctrine was inapplicable, despite the argument that zoning ordinances implicated important state interests. Id. at *7. See also Greer v. Mehiel, No. 15-cv-6119-AJN, 2016 WL 828128 (S.D.N.Y. Feb. 24, 2016) (rejecting Younger abstention in case involving tenant eviction proceedings).

Simply put, the fact that Georgia statutes provide an avenue for property owners (but not for tenants like Wilcox and Paulk) to challenge eminent domain proceedings in state court does not mean that GDOT's administrative decision is transformed into a "uniquely judicial function" requiring federal court abstention under the Younger doctrine. The District Court should not divert its "virtually unflagging" obligation to hear and decide Estes Park's federal discrimination claims.

## III. ESTES PARK HAS STATED A VALID CLAIM UNDER THE FAIR HOUSING ACT

The FHA is "broad and inclusive" and, courts must afford it "generous construction." City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1281-82 (11th Cir. 2015) (quoting Trafficante v. Metro. Life Ins., 409 U.S. 205, 209 (1972)). Ignoring this mandate, the District Court applied an extremely narrow interpretation of the FHA in holding that GDOT's alleged conduct of taking a portion of Estes Park, L.P.'s property, resulting in a discriminatory impact upon Estes Park's minority tenants, including constructive eviction, does not fall with

the purview of discrimination prohibited by the FHA. Specifically, the District Court held that: (1) § 3604(a) of the FHA only prohibits discriminatory conduct that makes housing "wholly unfit for habitation"; (2) § 3604(b) does not apply to discriminatory conduct that occurs after the initial sale or rental of housing; (3) GDOT's discriminatory conduct cannot be construed as discrimination in the "provision of services" prohibited by § 3604(b); and (4) GDOT's discriminatory conduct does not violate § 3617 because it is not "so severe or pervasive that it could be considered as threatening or violent." The District Court not only erred in applying a strained interpretation of the FHA, but also ignored the requirement that courts must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff when deciding motions to dismiss.

Indeed, to uphold the District Court's decision that the FHA does not protect the current tenants of Estes Park from discrimination, or even that the FHA protects these tenants from discrimination only if the conduct is so egregious that it forces them to vacate their homes, is contrary to Congress's goal of creating "'truly integrated and balanced living patterns,'" and would frustrate the purpose of the FHA. Trafficante, 409 U.S. at 211; see also Bloch v. Frischholz, 587 F.3d 771, 782 (7th Cir. 2009) (citing Trafficante and holding that requiring plaintiffs "to vacate their homes before they can sue undoubtedly stifles [the FHA's] purpose").

### A. GDOT's Alleged Conduct Makes Housing Unavailable Under § 3604(a)

The FHA makes it unlawful to make housing "unavailable" because of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(a). This Court has long recognized that a state or municipal government can make housing "unavailable" in violation of 3604(a). See e.g., Hallmark Developers, Inc. v. Fulton County, Ga., 466 F.3d 1276, 1283 (11th Cir. 2006) ("Housing may become unavailable within the meaning of the FHA as a result of zoning decision that effectively prohibit the construction of housing.") (citing Jackson v. Okaloosa Cnty. Fla., 21 F.3d 1531, 1542 n. 17 (11th Cir. 1994) ("Courts have construed the phrase 'otherwise make unavailable or deny' in subsection (a) to encompass actions by individuals or government units that affected the availability of housing to minorities."); Toucan Partners, LLC v. Hernando Cnty. Fla., 571 Fed. App'x 737 (11th Cir. 2014). What is more, conduct other than a denial of housing to a prospective homeowner or tenant may render housing "unavailable" under § 3604(a). See e.g., Hunt v. Aimco Prop., L.P., 814 F.3d 1213, 1223 (11th Cir. 2016) (court recognized § 3604(a) applies to post-acquisition claims and that "the FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause").

The District Court correctly recognized that GDOT's conduct could violate § 3604(a) if it made housing unavailable for the plaintiffs, "such as where

discriminatory conduct after the owner's or tenant's acquisition of the dwelling results in actual or constructive eviction." [Vol. III, Doc. 26, pg. 22]. However, the District Court held that Plaintiffs are unable to state a claim here because allegations of a "mere decline in the value, desirability, or habitability of a dwelling is insufficient to make out a claim that housing is 'unavailable' under Section 3604(a)." Id. at 23. The District Court erred for two reasons. First, GDOT's project involves a government action that applies directly to Estes Park, and, unlike the cases relied upon by the District Court, has a material impact on the availability of a dwelling to Plaintiffs. Second, Plaintiffs alleged that if GDOT is allowed to complete the roadway project, minority tenants would be constructively evicted from Estes Park. These allegations, accepted as true and giving all reasonable inferences to Plaintiffs as required when evaluating a motion to dismiss, are sufficient to establish GDOT made housing "unavailable" under § 3604(a).

#### 1. GDOT's Alleged Conduct Is Sufficient to Establish a §3604(a) Claim Because It Applies Directly to Estes Park.

The District Court held Plaintiffs are unable to establish a claim under 3604(a) unless they can show that GDOT's conduct "will make any unit wholly unfit for habitation." [Vol. III, Doc. 26, pg. 25]. The cases on which the District Court relied in dismissing the § 3604(a) claim involved conduct that had only a remote possibility of impacting the "desirability" or "habitability" of the housing occupied by the plaintiffs. For example, in Cox v. City of Dallas, 430 F.3d 734,

740 (5th Cir. 2005), the court held that the city's placement of a dump, which only arguably reduced the value of existing homes in adjacent neighborhoods, was insufficient to rise to the level of making housing "unavailable." In Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair, 743 F.2d 1207, 1210 (7th Cir. 1984), the court held that the county's alleged discriminatory refusal to maintain properties in predominately black neighborhoods in which plaintiffs lived fell short of establishing a claim under 3604(a). Finally, in Jersey Heights Neighborhood Assoc. v. Glendening, 174 F.3d 180, 192 (4th Cir. 1999), the court held that the siting of a state highway which plaintiffs claimed had a discriminatory impact on "an adjacent neighborhood with a significant minority population" did not state a claim under § 3604(a). Importantly, none of these cases held that a plaintiff must prove that a defendant's conduct made her housing "wholly unfit" for habitation in order to establish a § 3604(a) claim. Rather, these courts held that the conduct of the defendant in the particular case was far too attenuated to establish a § 3604(a) claim.

These cases are clearly distinguishable from the instant case because here GDOT's conduct is directed at Estes Park and has a direct impact on availability of Plaintiffs' housing. GDOT's conduct is directed solely towards Estes Park in that it is taking a portion of the property through eminent domain. In Cox, Southend, Jersey Heights, and other cases that rejected §3604(a) claims, the conduct allegedly

would reduce property values or limit the growth of a neighborhood so, at best, the defendant's conduct had a speculative impact on the plaintiff's property and was too attenuated from the alleged discrimination. In contrast, GDOT is taking Estes Park through eminent domain and this conduct takes away Plaintiffs' property rights, including ultimately leading to constructive eviction of minority tenants of Estes Park. See Greater New Orleans Fair Housing Action Center v. U.S. Dept. of Housing and Urban Dev., 723 F.Supp.2d 14, 23 (D.D.C. 2010) ("The claim here rests not on a reduction in property values or a limit on the growth of a residential area but on the inability of homeowners to inhabit their houses because of a Road Home Program formula."). This conduct that is directed at Plaintiffs and takes Plaintiffs' property rights is undoubtedly sufficient to form a claim that GDOT made housing "unavailable" under § 3604(a).

### 2. Paulk's Constructive Eviction Allegations Are Sufficient to Establish a § 3604(a) Claim.

Not only are the cases upon which the District Court relied factually distinguishable because of the remoteness of the alleged discriminatory conduct, but even those cases recognized that conduct that would result in the eviction or constructive eviction of an owner or renter would be sufficient to state a 3604(a) "unavailable claim." See Cox, 430 F.3d at 742 ("And it is not to say that a current owner or renter evicted or constructively evicted from his house does not have a claim [pursuant to 3604(a)]."). In accord with these decisions, the District Court

held that discriminatory conduct that results in constructive eviction was sufficient to state a § 3604(a) claim. However, the District Court incorrectly concluded "Plaintiffs do not allege that anyone . . . will be evicted from his unit, for discriminatory reasons." [Vol. III, Doc. 26, pg. 24]. This is simply wrong. Indeed, Plaintiffs alleged in their Amended Complaint, among other things, that GDOT's conduct "will result in a significantly adverse burden on minority tenants who will be evicted from their homes if the proposed roadway is constructed as proposed." [Vol. I, Doc. 6, ¶ 38]. The Court ignored these allegations and went on to substitute its judgment of these allegations stating, "at most . . . the closeness of the busy highway will be an annoyance to Estes Park Apartments residents and may negatively impact the desirability or habitability of the apartment units in the complex." [Vol. III, Doc. 26, pg. 25]. In assessing a motion to dismiss, the District Court is required to "assume the factual allegations in the complaint are true and give the plaintiff the benefit of reasonable factual inferences. Hazewood v. Found. Financial Group, LLC, 551 F.3d 1223, 1224 (11th Cir. 2008) (*per curiam*). The District Court's conclusions go to the credibility and weight of evidence needed to prove Plaintiffs' allegations and therefore go to the substantive merits of the claims. Such a consideration is inappropriate at the motion to dismiss stage where the Court must accept Plaintiff's allegations as true. Further, this is not simply siting a highway near Estes Park as the District Court characterized it,

but a taking of Estes Park which has a material impact on the housing rights of the Plaintiffs.

Finally, the District Court held that the risk of Estes Park losing federal subsidies because the highway noise exceeds the noise level limitations imposed by HUD, USDA, and Georgia DCA, which would result in closing Estes Park, was "possible" rather than "probable." This is simply another credibility determination by the District Court that is inappropriate in evaluating a motion to dismiss. Nonetheless, it is hard to imagine how losing federal financial assistance and shutting down the complex does not rise to the level of making housing "unavailable" under § 3604(a).

Put simply, GDOT's conduct of taking Estes Park's property through eminent domain which was directed at Plaintiff's property and would result in the constructive eviction of minority tenants, including Plaintiff Paulk, is sufficient for Plaintiffs to make a plausible claim that GDOT's conduct makes housing "unavailable." Therefore, even the cases cited by the District Court recognized that Plaintiffs'' claims fall squarely within § 3604(a).

### B. <u>The District Court Erred In Holding the Plaintiffs' Allegations Do Not Implicate §3604(b)</u>

Section 3604(b) of the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race,

color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The District Court erroneously held that Plaintiffs' claims do not implicate § 3604(b) because the alleged discriminatory conduct "does not relate to the 'sale or rental' of housing" and GDOT's conduct does not involve the "provision of services."

#### 1. Section 3604(b) Is Not Limited to Conduct Related to the Sale or Rental of Housing.

This Court has not addressed whether so-called "post-acquisition" claims are covered by § 3604(b). The District Court recognized a split of authority on this issue and relied on three district court decisions in concluding § 3604(b) applies only to the provision of services in connection with the initial sale or rental of housing. [Vol. III, Doc. 26, pg. 27] (citing Steele v. City of Port Wentworth, No. CV405-135, 2008 WL 717813 at *12 (S.D. Ga. Mar. 17, 2008); Lawrence v. Courtyards at Deerwood Ass'n, 318 F. Supp. 2d 1133, 1142 (S.D. Fla. 2004); Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, 276 F.Supp.2d 1222, 1233 (M.D. Fla. 2003), *vacated on other grounds*, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003)). The District Court's reliance on these district court decisions is misplaced as these decisions are neither controlling nor persuasive.

The FHA extends § 3604(b) to post-acquisition discriminatory conduct. The "terms, conditions, or privileges" referenced in § 3604(b) include not only the right to acquire housing, but also the right to inhabit a dwelling free from discrimination.

See e.g., United States v. Koch, 352 F. Supp. 2d 970, 976 (D. Neb. 2004) ("[I]t is difficult to imagine a privilege that flows more naturally from the purchase or rental of a dwelling than the privilege of residing therein."). Indeed, the term "privileges" and the phrase "services or facilities in connection therewith" would be superfluous if claims were limited to the initial act of selling or renting housing.

Congress tasked HUD with implementing regulations to carry out the FHA. 42 U.S.C. § 3608. HUD's regulations specifically prohibit "[l]imiting the use of privileges, services, or facilities associated with a dwelling because of race, color, religion, sex, handicap, familial status, or national origin…," 24 C.F.R. § 100.65(b)(4), "[r]efusing to provide municipal services…for dwellings or providing such services…differently…," 24 C.F.R. § 100.70(d)(4), and "[e]nacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings …," 24 C.F.R. § 100.70(d)(5). The conduct prohibited by these regulations many times arises only after the initial purchase or rental of a home.[1]

---

[1] HUD's regulations are entitled to deference under Chevron, USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984). Chevron requires that "if the statute is silent or ambiguous with respect to the specific issue," a court should ask only "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843. A court may not "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." Id. Even if § 3604(b) were ambiguous, HUD's regulatory interpretation confirms that the FHA applies to post-acquisition discriminatory conduct.

The Eleventh Circuit has not squarely addressed whether § 3604(b) applies to post-acquisition claims. However, in Hunt, *supra*, the Eleventh Circuit held that a complaint alleging post-acquisition discrimination stated a claim under § 3604 (f)(2). 814 F.3d at 1221-25. While this provision applies to discrimination on the basis of "handicap," it prohibits discrimination in the "terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling . . .," the same conduct prohibited by § 3604(b).

Numerous other circuit courts of appeal have applied § 3604(b) to post-acquisition discrimination. In Bloch, 587 F.3d at 772-73, Jewish condominium owners brought FHA claims against their condominium association challenging an association rule that prohibited owners from placing objects outside of individual unit entrances, including a mezuzah which the owners sought to display for religious purposes. The court held there were "two possibilities for relief" under § 3604(b) for these plaintiffs. Id. at 779. First, § 3604(b) encompasses claims of "constructive eviction" because "the right to inhabit the premises is a 'privilege of sale.'" Id. Second, the court recognized that the "privilege" to inhabit a dwelling is only one aspect of § 3604(b) and this provision also prohibits discrimination in the terms and conditions of the sale or rental of housing that also occurs only after the sale or rental of housing. Id. at 779-80 (citations omitted). Other circuits are in accord with Bloch. See also Comm. Concerning Cmty. Improvement v. City of

Modesto, 583 F.3d 690, 713-14 (9th Cir. 2009) (rejecting Cox v. City of Dallas, 430 F. 3d 734 (5th Cir. 2005) and Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n., 388 F.3d 327 (7th Cir. 2004); Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th Cir. 2003) (finding that plaintiff can base an FHA claim on post-acquisition actions); Honce v. Vigil, 1 F.3d 1085, 1089–90 (10th Cir. 1993) (applying the FHA to claims of post-acquisition sexual harassment).

Even the cases relied upon by the District Court are unpersuasive. Steele v. City of Port Wentworth held that the water services that were the basis for plaintiffs' claims were "wholly unrelated to the sale or rental." 2008 WL 717813 at *12. In arriving at this conclusion, Steele unnecessarily read ambiguity into § 3604(b), deciding "whether the language 'in connection with' refers to the 'sale or rental of a dwelling' or merely the 'dwelling' in general." Id. at *11 (quoting Cox, 2004 WL 370242 at *7). Applying this narrow interpretation of "in connection therewith," is an incorrect reading of the statute as discussed above. What is more, Steele held that the city's failure to provide water access and sanitation did not make housing unavailable because these services were available to plaintiffs by other means. Id. at *11. Here, in contrast, GDOT's taking of the property is directly responsible for making housing unavailable. Neither does Gourlay, 276 F. Supp. 2d 1222, support the District Court's conclusion because that court commented "[s]ection 3604(a) could potentially also extend to actions that actually

evict or have the affect [sic] of evicting" a plaintiff, and noted that § 3604(b) could be applied to post-acquisition conduct under certain circumstances.

If this Court were to reject post-acquisition liability, a service provider could discriminate against a tenant as long as it waited until after housing was acquired. Under that scenario, a municipality that refused to provide garbage removable services for African American renters would not face any liability. Congress clearly did not intend such a narrow interpretation of the FHA. Indeed, the right to rent housing free of discrimination would be hollow without protection after the initial sale or rental.

**2. GDOT's Conduct Involves the "Provision of Services."**

The District Court held that GDOT's conduct does not constitute the "provision of services" contemplated by § 3604(b). [Vol. III, Doc. 26, pg. 28]. There is no question that § 3604(b) prohibits governmental entities and other non-housing providers from discriminating in the provision of services that impact housing. See, e.g., City of Modesto, *supra*; LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424-25 (2d Cir. 1995) (local homeowners stated a claim for religious discrimination because zoning made dwellings unavailable to others of their religion); Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1357 (6th Cir. 1995) (§ 3604(b) applies to property insurance); NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 301 (7th Cir. 1992) (same). The District Court nonetheless

concluded the Plaintiffs' may not proceed under § 3604(b) because their claims involved a more tenuous connection to housing similar to that of siting a highway or a dump in an adjacent neighborhood. As explained above, the instant case is clearly distinguishable from those cases in which the alleged discriminatory conduct had at best a speculative impact on housing. While the District Court characterized this case as GDOT siting a highway adjacent to Estes Park, it is certainly more than that. The conduct of GDOT is directed towards the Plaintiffs and will result in a tangible loss of the Plaintiffs' property, including constructive eviction of at least Paulk. GDOT's conduct is more analogous to that of a municipality's zoning laws or an insurer refusing to provide property insurance which has a direct impact on the housing in question. GDOT is taking a portion of Estes Park not merely siting a highway or baseball stadium in the same neighborhood. This direct and substantial impact on Estes Park is sufficient to state a claim under § 3604(b).

### C. The District Court Erred in Holding GDOT's Conduct Cannot Violate § 3617

Section 3617 provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" rights granted or protected by the FHA. Section 3617 is not limited to retaliation claims and does not require an underlying violation of § 3604. See, e.g., Sofarelli v. Pinellas Cnty., 931 F.2d 718, 721-22

(11th Cir. 1991) (Section 3617 applied to claim against neighbors who interfered with plaintiff's ability to move into house); Lawrence, 318 F.Supp.2d at 1143-44 (Section 3617 prohibition on "interference" applies to post-acquisition hostile housing environment claim); Quigley v. Winter, 598 F.3d 938, 948 (8th Cir. 2010) (Court held that retaliation is only one form of conduct prohibited under § 3617); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1063 (9th Cir. 2004).

Relying on two district court cases, the District Court held that Plaintiffs may establish a § 3617 "interference" claim only if GDOT's conduct "is so severe or pervasive that it could be considered as threatening or violent." [Vol. III, Doc. 26, pg. 30]. The Eleventh Circuit has never addressed what constitutes "interference" under § 3617 and has certainly never held § 3617 imposes the heavy burden the District Court required of Plaintiffs here. See Sofarelli, 913 F.2d at 722 (not addressing "interfere," but holding a note threatening to break plaintiff in half, hitting plaintiff's truck, showing obscenities and spitting at plaintiff constitutes "coercion" and "intimidation").

Contrary to the District Court's holding, a governmental agency's discriminatory conduct that interferes with an individual's attempt to provide equal housing opportunities violates § 3617 even absent severe or pervasive threats of violence. See, e.g., United States v. City of Parma, 494 F. Supp. 1049, 1100 (N.D. Ohio 1980) ("This interference by the City with developers attempting to provide

equal housing opportunities in Parma is a violation of Section 817 of the Fair Housing Act."); United States v. Borough of Audubon, 797 F. Supp. 353, 357 (D. N.J. 1991) (local governmental action to prevent use of dwelling as a group home for persons with disabilities violated § 3617); United States v. City of Black Jack, 508 F.2d 1179 (8th Cir. 1975), *cert. denied*, 422 U.S. 1042 (1978) (city ordinance prohibiting construction of any new multi-family dwelling was sufficient to establish a violation of § 3617); Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights, 558 F.2d 1283, 1288 (7th Cir. 1977).

In holding that a § 3617 "interference" claim requires severe or pervasive conduct that is "threatening or violent," the District Court has ignored the plain meaning of the statute. Indeed, § 3617 makes it unlawful to "threaten" or "interfere" with a person's housing rights. The District Court's interpretation that requires a person to show they were "threatened" in order to establish "interference" improperly conflates separate forms of discrimination into one imposing an artificial burden on a plaintiff to establish both a "threat" and "interference" in order to establish a claim. Moreover, the FHA's criminal provision demonstrates that the term "interference" in § 3617 does not require a showing of violence or threatened violation. Section 3631 of the FHA provides, "[w]hoever . . . by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with" a person's fair housing

rights on the basis of protected class is subject to criminal prosecution. 42 U.S.C. § 3631. Here, Congress spelled out that those who interfere with person's fair housing rights "by force or threat of force" are subject to criminal penalties. Had Congress intended to require violence or threatened violence to be part of establishing an "interference" claim under § 3617 it would have included such terms in the statute. Thus, the District Court's attempt to read a showing of violence or a threat of violence into § 3617 is not supported here.

## IV. ESTES PARK'S COMPLAINT STATES A VALID CLAIM UNDER TITLE VI OF THE CIVIL RIGHTS ACT

The allegations in Estes Park's Complaint establish a *prima facie* violation of Title VI of the Civil Rights Act of 1964. To establish a *prima facie* case of discrimination under Title VI, Estes Park need only allege that: (1) GDOT engaged in unlawful discrimination; and (2) GDOT was receiving federal financial assistance. See Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1139 (N.D. Cal. 2000) (citing Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001)).

Estes Park has satisfied both elements of a Title VI claim. Estes Park alleged, and GDOT does not contest, that GDOT and the State of Georgia are recipients of federal funding from the United States Department of Transportation. [Vol. I, Doc. 6, ¶ 49]. As discussed in further detail in the following section, Estes

Park likewise alleges that GDOT engaged in unlawful and intentional discrimination when they purposely utilized misleading data to conduct their EJ analysis. Id. at ¶ 38. The improper analysis, which specifically excluded the Estes Park apartments from consideration, allowed GDOT to designate the location of the proposed highway project as including a significant portion of the Estes Park property. GDOT's conduct was arbitrary, capricious, and done with the intention of discriminating against Estes Park's minority tenants.

## V. ESTES PARK ADEQUATELY PLED A VIOLATION OF ITS SUBSTANTIVE DUE PROCESS RIGHTS UNDER § 1983

The Fourteenth Amendment's Due Process Clause provides that no state shall “deprive any person of life, liberty, or property, without due process of the law.” U.S. Const. amend. XIV, § 1. Substantive due process protects the rights that are fundamental and “implicit in the concept of ordered liberty.” Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (*per curiam*) (quotation and citation omitted). Deprivation of property interest rises to the level of a due process violation if undertaken " 'for an improper motive and by means that were pretextual, arbitrary and capricious, and…without any rational basis.' " Spence v. Zimmerman, 873 F.2d 256, 258 (11th Cir. 1989) (internal quotation omitted). Thus, to state a substantive due process claim, a plaintiff must allege: (1) the existence of a protected property interest; and (2) "arbitrary and capricious conduct" on the part of the state actor by showing that there was no

rational basis for the actor's decisions. See Id.; Haberle v. Univ. of Alabama in Birmingham, 803 F.2d 1536, 1539 n. 1 & 1540 (11th Cir. 1986).

Here, Estes Park has identified the property interest as stake—the proposed highway project will take approximately 110 feet by 410 feet of the front of the Estes Park property and will render other portions of the property unusable for tenants. [Vol. I, Doc. 6, ¶¶ 20, 23]. The fact that Estes Park will be compensated for this taking through the eminent domain proceedings does not change the analysis. "A property owner has been denied substantive due process…the moment a governmental decision affecting his property has been made in an arbitrary and capricious manner, regardless of whether he is later compensated for that violation." Langley Land Co. v. Monroe Cty., 738 F. Supp. 1571, 1577 (M.D. Ga. 1990) (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1574 n. 8 (11th Cir. 1989)).

Moreover, Estes Park has adequately pled that that GDOT acted in an arbitrary and capricious manner when it took the portion of the Estes Park property for its highway project. Specifically, Estes Park alleges that federal law requires GDOT to conduct an EJ analysis for the proposed project to evaluate disproportionate and adverse impacts on minority and low-income populations. [Vol. I, Doc. 6, ¶¶ 29-31]. If a disproportionately high and adverse effect on an EJ population is identified, after taking benefits and mitigation into account, GDOT

must evaluate whether there are practicable mitigation measures or alternative that would avoid or reduce the adverse effects. GDOT did not comply with this obligation because it knew of the existence of Estes Park, Id. at ¶ 33, yet failed to conduct any analysis regarding the effects of the highway project on Estes Park's minority tenants. Indeed, GDOT intentionally used misleading and outdated census data to identify affected EJ properties. Id. at ¶ 35.

The District Court held that such allegations were insufficient to find GDOT's conduct to be arbitrary and capricious because the City Manager (not GDOT) noted at the project's Initial Concept meeting that Estes Park was a minority housing complex, because GDOT conducted an EJ analysis for the area, and because GDOT eventually met with Estes Park to discuss the project. [Doc. 26, pg. 35-36]. The District Court fails to note, however, that despite the City Manager's warning to GDOT that Estes Park is a minority-based property, GDOT still purposely omitted Estes Park from its EJ analysis in violation of its duties under federal law and instead utilized knowingly untrue census data. Thus, despite the District Court's statement to the contrary, the Complaint plausibly alleges that the data was "obviously untrue." [Doc. 26, pg. 35]. Furthermore, GDOT did not meet with Estes Park until after Estes Park initiated litigation challenging the action, and yet GDOT still refused to consider the alternative design Estes Proposed that would result in less impact on its minority tenants and save taxpayer

funds. [Vol. I, Doc. 6, ¶ 39]. Since the District Court must accept all allegations as true at the motion to dismiss stage, Estes Park's allegations are sufficient to allege arbitrary and capricious conduct on the part of GDOT. See, e.g., Sierra Club v. Martin, 168 F.3d 1, 5 (11th Cir. 1999) (agency actions arbitrary and capricious where agency failed to examine the relevant data and articulate a satisfactory explanation for its action); Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991) (reliance on false information in decision-making process constitutes arbitrary and capricious conduct). Consequently, Estes Park has established a *prima facie* claim that GDOT violated its substantive due process rights.

## CONCLUSION

WHEREFORE, the Plaintiff-Appellants respectfully pray that this Court reverse the Order granting Defendant-Appellee's Motion to Dismiss and remand this matter for further proceedings.

Dated: August 31, 2016

By: */s/Edward F. Preston*
Edward F. Preston (GA #587416)
Attorney for Appellees
COLEMAN TALLEY, LLP
PO Box 5437
Valdosta, GA 31603-5437
Telephone: (229) 242-7562
Facsimile: (229) 333-0885
ed.preston@colemantalley.com

By: */s/Scott Parrish Moore*
Scott Parrish Moore (NE #20752)
Leigh C. Campbell (MA #682637)
Attorney for Appellees
BAIRD HOLM, LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68114
Telephone: (402) 636-8268
Facsimile: (402) 344-0588
spmoore@bairdholm.com
lcampbell@bairdholm.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 7,590 words.

*/s/Edward F. Preston*
Edward F. Preston
Georgia Bar No. 587416
Attorney for Appellants

COLEMAN TALLEY LLP
Post Office Box 5437
Valdosta, GA 31603-5437
Telephone: (229) 242-7562
Facsimile: (229) 333-0885
Email: ed.preston@colemantalley.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed the foregoing brief using the CM/ECF system, which will automatically send electronic copies to the following attorneys of record: Samuel S. Olens, Kathleen M. Pacious, Devon Orland and Roger A. Chalmers, State Law Department, 40 Capital Square SW, Atlanta, GA 30334. I further certify that I have served the above attorneys of record a copy of said brief by U.S. mail, first class postage prepaid.

*/s/Edward F. Preston*
Edward F. Preston
Georgia State Bar No. 587416
Attorney for Appellants

COLEMAN TALLEY LLP
Post Office Box 5437
Valdosta, GA 31603-5437
Telephone: (229) 242-7562
Facsimile: (229) 333-0885
Email: ed.preston@colemantalley.com